All right, our next case for argument is Lawrence Kithongo against Attorney General Garland, appeal number 21-1963. We'll hear first from Ms. Kahn. Good morning. Good morning, Your Honors. May it please the court, my name is Afshan Kahn. I represent the appellant petitioner Lawrence K. Kithongo in this matter. Your Honors, my client has multiple issues that he's presenting this court and he would hope that based on our arguments and based on our brief you agree to grant a petition for review. My client argues that the immigration appeals denied, erroneously denied his claims, his relief for adjustment of status to become a lawful resident based on his marriage to a US citizen wife, as well as his claims of fear of persecution under withholding removal and deferral of removal under the Convention Against Torture. The first issue, my client's conviction of conspiracy to commit robbery in the fifth degree is not an aggravated felony. The immigration judge found that it was an aggravated felony because he served 365 days, one year. But when you look at my client's actual criminal statute itself, you will see if you look at whether a crime itself is considered a removal offense, it was used a categorical approach under Moncrieff v. Holder, which is something that this court as well as courts and appeals throughout have used this type of analysis. One must look at the federal generic terms and whether or not the elements meet the state terms. And looking at the federal generic terms of theft itself, it clearly states that it is a taking, permanently taking, of the property owner. Whereas my client was convicted of conspiracy to commit robbery, where robbery itself in Indiana statute reads that the person must take from a person or in the presence of another person. So clearly just by the fact that they're especially broad, it's overly broad compared to the federal statute itself. Because it's not just limiting to the property owner, but to any person that a person can do a taking as well. And it's based on this that my client's conviction of a conspiracy to commit robbery would not be considered an aggravated felony for immigration purposes. Robbery? So let me make sure I understand this. Your contention is that robbery in Indiana is not treated as, what, a crime of violence? An aggravated felony? It's not a crime of theft, Your Honor. It would not be considered a theft. Are we talking about theft or robbery? Robbery. Okay. Which generally is treated as a pretty serious crime. Crime of violence. We've said that under Indiana law repeatedly. Yes, Your Honor. And while it is a serious crime, it is still facially overly broad to the generic term. And in that respect, we're saying that it's not a removable fence for my client. Why not? Because the term itself, because the definition, the elements of robbery, of theft, in Indiana. Again, are we talking robbery or theft? Robbery. I apologize. Robbery. They contain additional elements that the generic term does not contain. So in that situation in which somebody could commit Indiana robbery and it would not qualify under immigration law as an aggravated felony. Again, what I'm, what we're arguing, my client is arguing, is that he was charged with a taking of, under, in front of another person or a, or in the presence of another person. Whereas, in general, you're, in terms of robbery, you're actually robbing from the property owner themselves. Is that an essential element of robbery in the generic version? I believe so, Your Honor. I thought it just had to be a threat. Sorry, go ahead. I believe it is, Your Honor, but again, I'm more than happy to discuss this further in my rebuttal as well. Just, well, moving on to the next arguments. Ms. Khan, before you get there, the government made several jurisdictional arguments in its brief. You did not file a reply brief. Would you like to respond to those jurisdictional arguments now? Well, I believe that my client is, that this court does have jurisdiction over my client's case, as my client specifically is looking at questions of law in regards to his relief under withholding removal and Convention Against Torture. So these are things in which, whether or not he can show that he meets his burden, the legal standards, for more likely than not, for withholding removal and the Convention Against Torture, which my client, based on his credible testimony, which the immigration judge did find, as well as, which was acknowledged by the department's brief in itself. That addresses withholding of removal and Convention Against Torture, but not the adjustment of status where the government is telling us we really don't have jurisdiction to review those discretionary decisions. Your Honor, yes, we're not asking you to make, to look at the discretionary decisions, as that is for the IJ to the immigration judge to determine. But we are looking, what we are asking you as a question of law, looking at whether or not my client's convictions are convictions that would make him ineligible for relief, based on the definitions of whether or not he meets those definitions of an aggravated felony, as well as whether his criminal history itself would be considered, would be considered a crime that would render him ineligible for any type of they want to deport him back to Kenya. He didn't want to go back to Kenya, right? Yes, so my client from the very start has always stated that he does not want to go back for fear of persecution. My client under, because filed claims under withholding a removal and deferral removal of Convention Against Torture because of his past experience of being, of being persecuted due to his imputed political belief, as well as his father's religious beliefs. Growing up, my client explained that he himself was target of harassment, as well as threats, and two physical assaults, one of which he was actually stabbed in the thigh because of his father's imputed religious beliefs being, following Judaism, as well as him being a supporter of the opposition party at the time against the ruling government. And he's 30 and he's been here since he's 19? He's been here since 2010, your honor, so yes, so about 12 years. Okay, thank you. Yes, but. What arguments did you raise before the Board of Immigration Appeals? Well, again, we argued that based on the country condition reports, it shows that the immigration judge overlooked current country condition reports that show in 2019 Kenya, our own US Department of Justice, shows that Kenyan police use torture as a means to get information that they are in, that they specifically cause the disappearance of persons, and the government itself is not trying to provide any kind of help or protection from these types of tactics. The reason I'm asking is the government, as you'll recall, argued that you're raising a lot of issues before us that you did not raise before the Board of Immigration Appeals. That's why I'm asking. I have all the issues you raised before the BIA. I believe that we did address those issues in my my brief with the Board of Immigration Appeals in regards to the fact that the immigration judge did overlook all of our country reports showing that in 2019. Anything else, just overlooking the country reports? Yes, yes, Your Honour. Yes, and then, of course, my client's incredible testimony itself, which clearly described what he'd experienced in the past, as well as what he's afraid of going forward, what he anticipates should he return to his home of Kenya. If I may, may I reserve some time for rebuttal? You may. Let's see, okay. For the government, Mr. Tennyson. Thank you, Your Honour. Good morning. Good morning. May it please the Court, Robert Tennyson, for the government. Very briefly, this court lacks jurisdiction over almost every aspect of this claim, and to the extent that it does have jurisdiction, the issue with regard to deferral under the Torture Convention has been, is unexhausted and waived, specifically because there's not been any challenge to the immigration judge's finding that the petitioner needed to corroborate her claim, needed to corroborate his claims, and could be reasonably expected to have done so. First, with regard to adjustment, there is no jurisdiction over those under 1252. Please speak up a little bit. Oh, yes, Your Honour. Your voice is falling off at the end of your sentence. I'm sorry, Your Honour. It's pretty loud for me. Under 1252A2B1, this court lacks jurisdiction over discretionary determinations. Here, with regard to adjustment status, the immigration judge actually made two. The first was with regard to whether or not the petitioner was entitled to a waiver under 1182H, and the immigration judge said that there was no extreme and unusual hardship there. That determination, this court has found, is a discretionary determination over which it lacks jurisdiction under 1252A2B1. Likewise, with regard to the ultimate finding as to whether or not the petitioner was entitled to adjustment of status, the immigration judge found that he did not merit it. That determination, as well, is a judgment with regard to discretion that is covered under 1252A2B1. Moving to withholding of removal, both under the statute and under the Torture Convention, the immigration judge found that the petitioner had committed a particularly serious crime. Particularly serious crime determination has been found by this court in Estrada-Martinez to be a discretionary determination over which it lacks jurisdiction under 1252A2B2. And that is not a, that, on that kind of thing, the immigration judge and the BIA can use fact-specific analyses, not limited to the categorical method? That is correct. Sometimes the immigration, there is a provision for the withholding provision that, where the, that, I guess, creates per se particularly serious crimes, where you have an aggregated felling to which the individual has been sentenced an aggregate of five years. That's not the case here. And in those kinds of circumstances, the immigration judge does a factual determination. Here, the immigration judge, with regard to the robbery conviction, did nothing but a factual determination. Analyzing, examining the fact that the petitioner in this case was part of a robbery where one individual, where a minor was pistol-whipped by one of his co-conspirators and another was pushed, another minor was pushed forcibly into a back of a car by a different co-conspirator, and analyzing the facts and circumstances of the crime, found that it was a particularly serious crime. Under Estrada-Martinez, this court has determined that those kinds of determinations, those kinds of  determinations, are jurisdictionally barred. So, the only thing that remains is the deferral of removal under the Convention Against Torture. And here- Please don't stop in the middle of your sentence. That's what I'm having, my problem is that you lower your voice at the end of your sentence. Oh, sorry. My question is about Kenya. Is he deportable? Is he deportable to Kenya? Yes, Your Honor. Isn't that what's going to happen as soon as he gets out, if he gets out? So, he's currently in immigration detention, so they will arrange for him to be removed to Kenya after if the final order of removal is upheld, insofar as I'm aware, unless the agency for some reason determines that it wishes to So, finally, with regard to the corroboration finding, or the finding that the petitioner had not corroborated his, you know, had not corroborated his testimony, the petitioner, again, neither in his brief before the board, nor in his brief before this court, has argued anything with regard to that corroboration finding, either that the immigration judge, either that the immigration judge's reticence for wanting corroboration, seeking immigration judges, finding that he could reasonably have obtained that corroboration, have been challenged. And because they have not been brought to this court, they are unexhausted, and they are also waived. If this court has no further questions, the government rests. Nothing else. Thank you. All right. Thank you very much. Let's see. Mr. Tennyson, and then Ms. Kine, you had some time for rebuttal. Your Honors, we're not asking for this court to consider discretionary matters. We are fully aware that this court cannot look at these things. What we are asking is to look at the matter of law, whether my client's convictions is something that would be constituted an aggravated felony or something that would disqualify him from receiving any type of relief, which we argue that it does not consider an aggravated felony in terms of the conviction to commit, the conviction of conspiracy to commit robbery, as well as his additional criminal history, does not render him as a matter of law to limit him from applying for adjustment of status. In regards to his withholding and in regards to the commission against torture, again, these are things that are not in the court as matters of law, and we're arguing that my client is more likely than not to be tortured and or persecuted based on the imputed political opinion of his father being a supporter of the opposition party, as well as his father's practice of Judaism in his home country of Kenya. And while we understand the corroboration element may not have been addressed explicitly, we did make the arguments, and under the Seventh Circus Lozano Zunga v. Lynch in 2006, as well as in 2016, and the Tchenko v. George case in 2007 states that an immigration judge must look at all factors, including the past experiences of the clients in terms of what had happened to him, flagrant patterns of abuse and patterns of persecution by the country itself, and must consider also country condition reports as well. My client has been in detention for at least two and a half years now. He has made attempts to try to get additional documents from his family members in Kenya itself, but based on the country condition reports, they clearly state that my client would be a target of persecution and torture. In 2019, opposition parties who tried to protest against ruling government were arrested, detained, and were taken, and this is all in the Again, my client also submitted other documents showing that individuals are, because of my client's father's religious beliefs, he was a target and he was physically harmed twice in his life as an adolescent, and he was not able to walk for at least a few months before he was able to because of these attacks. So we certainly hope that you can grant my client's petition for review and allow him to remain in the country based on these types of relief. Thank you, Ms. The case will be taken under advisement.